UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:11-cv-812

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) PLAINTIFF'S MEMORANDUM IN<br>) OPPOSITION TO DEFENDANT'S<br>) MOTION TO DISMISS FIRST |
| THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION, d/b/a MOSES CONE HEALTH SYSTEM, d/b/a CONE HEALTH BEHAVIORAL HEALTH HOSPITAL, | ) AMENDED COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant | )<br>) |

_____

Pursuant to Local Rule 7.3(f), Plaintiff files this Memorandum in Opposition to Defendant's Motion to Dismiss the First Amended Complaint.

## INTRODUCTION

Plaintiff, Disability Rights North Carolina ("DRNC"), brought this action for declaratory and injunctive relief pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("the PAIMI Act"). 42 U.S.C. § 10801 *et seq.* By this action, DRNC challenged the refusal of the defendant, the Moses H. Cone Memorial Hospital Operating Corporation ("Moses Cone"), to provide DRNC with records to which DRNC is legally entitled.

Moses Cone asserts that DRNC has failed to state a claim under Rule 12(b)(6). As will be discussed, every federal court that has had occasion to examine the scope of a

peer review privilege in the context of the authority granted to the Protection and Advocacy System ("P&A") under the PAIMI Act has reached the same conclusion: the PAIMI Act entitles the P&A to obtain peer review records, notwithstanding the existence of a state peer review privilege statute. This Court should do likewise and deny the Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiff DRNC, the P&A designated by the Governor of the State of North Carolina to provide protection and advocacy services to individuals with disabilities, receives federal funds pursuant to the PAIMI Act. DRNC is authorized to investigate suspected incidents of abuse and neglect and to pursue administrative, legal and other remedies on behalf of individuals with mental illness. See 42 C.F.R. § 51.31(a). In order to carry out its investigative functions, DRNC is granted the authority to have access to an array of medical and other records where there is probable cause to believe a person was subjected to abuse and/or neglect. 42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.42(b)(2).

Defendant Moses Cone is a healthcare network composed of multiple providers. Moses Cone provides a range of services to individuals in Guilford County and surrounding counties, including in-patient psychiatric services at Cone Health Behavioral Health Hospital ("Behavioral Health Hospital") in Greensboro, North Carolina. (Complaint ¶ 12).

D.K., an individual with mental illness, was admitted as a patient of Behavioral Health Hospital on November 22, 2010. Immediately after administering a psychotropic medication to D.K. against his will, Behavioral Health Hospital staff held D.K. in a physical hold. D.K. struggled against the restraint then appeared to relax. Behavioral Health Hospital staff discovered that D.K. had shallow respirations and a low pulse. Despite efforts to revive him, D.K. died on November 24, 2010, approximately one hour after he was restrained. The medical examiner determined D.K.'s exertion against the restraint was a contributing factor in his death. (Complaint ¶ 14).

DRNC received a report of D.K.'s death and, based on the report, determined it had probable cause as defined in 42 C.F.R. § 51.2 to suspect that D.K.'s death was a result of abuse and/or neglect, thus meriting further investigation. Based upon this probable cause determination, DRNC initiated an investigation into D.K.'s death pursuant to its federal authority under the PAIMI Act. (Complaint ¶ 15).

In the course of its investigation, DRNC made multiple requests, both orally and in writing, for Moses Cone to provide its internal investigation records to DRNC. These requests included but were not limited to root cause analyses and other peer review records. Moses Cone repeatedly denied DRNC's request, stating that it would not provide the requested documents without a court order. (Complaint ¶¶ 16-20). The Defendant's refusal to produce the requested records prevents DRNC from fulfilling its statutory mandate to investigate allegations of abuse and neglect and to provide protection and advocacy services for individuals with disabilities, specifically D.K. (Complaint ¶ 6).

# ARGUMENT

## I. Because Plaintiff Has Properly Alleged a Violation of the PAIMI Act, Defendant's Motion to Dismiss Should be Denied

### A. Standard of Review Under Rule 12(b)(6)

"The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Presley, 464 F.3d at 483. In deciding such a motion, courts should consider a plaintiff's well-pleaded allegations as true and view the complaint in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

### B. Plaintiff States a Claim Upon Which Relief Can Be Granted

The P&A is authorized to seek legal and equitable relief against organizations that deprive it of federally protected rights. See Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1636 (2011). DRNC's complaint asserts an ongoing violation of federal law: Moses Cone's continuing refusal to provide documents to which DRNC has a legal right under the PAIMI Act (Compl. ¶¶ 16-20, 22-30). DRNC has sought prospective declaratory relief from this court to resolve the dispute. Plaintiff's First Amended Complaint properly states a claim upon which this Court may grant relief.

In a substantially similar matter, the district court for the Eastern District of Virginia denied the defendant's Rule 12(b)(6) motion to dismiss the complaint of the Virginia P&A. In Va. Office for Prot. & Advocacy v. Reinhard, 2008 U.S. Dist. LEXIS 54922, *7 (E.D. Va. July 18, 2008), the defendants argued that the P&A had not stated a plausible claim for relief in asserting their authority to access records under the PAIMI Act. Denying the defendant's motion to dismiss, the court stated, "VOPA [the P&A] has clearly alleged on ongoing violation of federal law: that the Defendants refuse to provide records that are required to be provided to VOPA by the PAIMI and DD Acts." Id. at *6. DRNC's First Amended Complaint asks for this same relief, and Moses Cone's motion to dismiss should similarly be denied.

## II. Because State Peer Review Privilege Does Not Apply in this Matter, Defendant's Motion to Dismiss Should be Denied

In its motion to dismiss, Moses Cone argues that state peer review privilege provides it an absolute protection from any disclosure of the requested records. However, the Defendant's interpretation of the statute ignores both the plain language of the statute and case law regarding the statute's intent.

A court's interpretation of a statute always begins with the language of the statute itself. See Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 405 (1979). The North Carolina statute provides only limited protection to peer review records:

> (b) The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1, "Public records defined", and *shall not be subject to discovery or introduction into*

5

> *evidence in any civil action against a hospital…which results from matters which are the subject of evaluation and review by the committee.*

N.C. Gen. Stat. § 131E-95(b) (emphasis added). On its face, the statute does not cloak all records with the privilege, nor does it protect the records from disclosure in all instances. The privilege is limited to records that are not otherwise discoverable or public, and only protects the hospital from the use of the records against it in civil litigation arising from the matter under the committee's review. Moses Cone's attempt to expand the statute's protections to any lawsuit or investigation should be rejected.

North Carolina courts have long recognized the limited nature of the peer review privilege. "North Carolina case law reveals that hospitals will not be able to use the peer-review committee as a 'privilege' clearinghouse for protecting otherwise discoverable information." Erney v. Welliver, 2000 U.S. Dist. LEXIS 21290, *4-5 (W.D.N.C. Mar. 13, 2000). Moreover, the Fourth Circuit has held that in at least some circumstances, i.e. "[in] the interest of facilitating the eradication of discrimination … providing perhaps the only evidence that can establish its occurrence outweighs the interest in promoting candor in the medical peer review process." Virmani v. Novant Health, Inc., 259 F.3d 284, 289 (4th Cir. 2001).

All of the federal courts that have considered the matter of peer review privilege in the context of P&A access authority have determined that peer review privilege statutes must give way to the authority of the PAIMI Act. Pennsylvania Prot. & Advocacy, Inc. v. Houston, 228 F.3d 423 (3rd Cir. 2000) is illustrative. In Houston, the Third Circuit

6

Case 1:11-cv-00812-WO-LPA   Document 16   Filed 01/06/12   Page 6 of 18

concluded that a Pennsylvania statute, identical to N.C. Gen. Stat. § 131E-95(b), does not prohibit the disclosure of peer review records to the P&A:

> Here, PP&A [the P&A] is seeking the peer review reports in order to fulfill the advocacy and investigatory purposes of PAMII[1]… PP&A is not seeking to discover the reports or to introduce them into evidence in a civil action… There is nothing in the Pennsylvania statute to support the inference that a peer review report must be kept 'in confidence' from a state's independent advocacy organization. To the contrary, the inference to be drawn from the Pennsylvania statute's reference to a 'civil action' is that the statute requires that peer review reports be kept out of the hands of lawyers involved in civil litigation. See 739 A.2d at 118 ("Thus, the intent of the legislature, as revealed by the plain language of [the Pennsylvania statute] and confirmed by its legislative history, was to prevent the disclosure of peer review information to outside parties seeking to hold professional health care providers liable for negligence….").

Houston, 228 F.3d at 428 (citing Hayes v. Mercy Health Corp., 739 A.2d 114, 118 (Pa. 1999)). The Second Circuit also held that the state peer review statute did not prevent the disclosure of such records to the P&A. Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119, 128 (2nd Cir. 2006) ("Disclosure of peer review records is not absolutely prohibited, but prohibited only in the context of a civil action against a health care provider in certain circumstances."). All of the Circuit Courts to have considered the issue have reached the same result, requiring the disclosure of peer review records to the state P&A. Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin., 603 F.3d 365, 382-383 (7th Cir. 2010), cert. denied, 131 S. Ct. 2149 (2011); Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health, 447 F.3d

---

[1] Enacted in 1986, the Protection and Advocacy for Mentally Ill Individuals Act was commonly referred to as the PAMII Act. After the 1991 amendments to the Act incorporated the phrase "individuals with mental illness," the Act became known as the PAIMI Act.

7

1021, 1024 (8th Cir. 2006); Ctr. for Legal Advocacy v. Hammons, 323 F.3d 1262, 1272-73 (10th Cir. 2003).[2] In sum, the state statute does not protect the requested peer review records from disclosure in the context of a P&A investigation.

### III. Even If State Peer Review Privilege Does Apply, it is Preempted by the PAIMI Act, and Defendant's Motion to Dismiss Should be Denied

#### A. The Plain Language of the PAIMI Act Requires Disclosure of All Records, Including Peer Review Records

The PAIMI Act gives DRNC, as North Carolina's designated P&A, the authority to investigate incidents of abuse and neglect of an individual with mental illness if there is probable cause to believe such incidents occurred. 42 U.S.C. § 10805(a)(1)(A). To aid in its investigation, DRNC is entitled to "have access to all records of" the individual who was allegedly abused or neglected. § 10805(a)(4)(A). "The term 'records' includes reports prepared by any staff of a facility rendering care and treatment …." Id. § 10806(b)(3)(A). The definition of records also encompasses "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury… that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents …." Id.

---

[2] Any concern that disclosing the requested records to the P&A would result in later disclosure to another party should be allayed by the strict confidentiality requirements imposed upon the P&A.
> PAMII imposes a duty of confidentiality on the advocacy organizations themselves. See 42 U.S.C. § 10806(a) ('An eligible system which, pursuant to [PAMII], has access to records which, under … State law, are required to be maintained in a confidential manner by a provider of mental health services, shall … maintain the confidentiality of such records to the same extent as is required of the provider of such services.'). … Since PAMII requires advocacy organizations themselves to maintain the confidentiality of peer review reports, disclosure of peer review reports to advocacy organizations is not precluded by the Pennsylvania statute.

Houston, 228 F.3d at 428-429 (internal citations omitted).

Under either part of the definition of records, DRNC is entitled to access all internal investigation reports, including peer review reports, regarding D.K.'s death. North Carolina law defines a medical review committee (i.e. a peer review committee) as "any of the following committees formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing: … (b) a committee of a medical staff of a hospital; (c) a committee of a hospital or hospital system…." N.C. Gen. Stat. § 131E-76(5)(b)-(c). If Moses Cone's peer review committee is comprised of the hospital's medical staff, or is otherwise a committee of the hospital, any reports developed by that committee would be reports prepared by the staff of the facility. Therefore, such reports would constitute records to which DRNC is entitled access. See Houston, 228 F.3d at 426; see also Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin., 603 F.3d at 382 ("In light of the language of the PAIMI Act itself, however, we join all other circuits that have addressed the issue and agree with [the P&A] that peer review records are 'records' under the PAIMI Act."); Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d at 125 ("We agree with the reasoning of the Third and Tenth Circuits that PAIMI's language is clear. … The term 'records' is defined broadly to include reports prepared by any staff of the facility, reports prepared by investigative agencies, and discharge planning records.'). Accord Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health, 447 F.3d at 1023; Hammons, 323 F.3d at 1270.

A medical review committee is also defined as "(a) a committee of a state or local professional society; … (d) a committee of a peer review corporation or organization." N.C. Gen. Stat. § 131E-76(5)(a, d). If Moses Cone's peer review committee is comprised of members of a professional society or peer review organization, any reports developed by that committee would be reports "prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury." 42 U.S.C. § 10806(b)(3)(A). Again, such reports would constitute records to which DRNC is entitled access. See Houston, 228 F.3d at 426 n.2 (internal citations omitted).

Moses Cone argues that the hospital is not an "agency" charged with investigating allegations of abuse or neglect. Def. Brief in Support of Its Motion to Dismiss p. 9-10. As explained above, Moses Cone's peer review committee may be an agency charged with investigating such allegations, depending upon the composition of the committee. However, even if the committee does not constitute an "agency" for purposes of the PAIMI Act, the records of the peer review committee would fall under the portion of the PAIMI Act applicable to reports developed by facility staff. Because the peer review reports fall within the portion of the statutory definition regarding reports prepared by facility staff, DRNC is entitled to access these records. Houston, 228 F.3d at 426 n.2.

### B. Congress Intended the PAIMI Act to Preempt State Law

Moses Cone argued that the PAIMI Act does not provide DRNC the authority to access its internal investigation reports, including peer review reports, because North Carolina law restricts the disclosure of such reports. Def. Brief in Support of Its Motion

to Dismiss p. 5-8. "There is nothing in the text of PAMII, however, that supports the [] contention that this federal statute does not require disclosure of peer review reports that are protected under state law." Houston, 228 F.3d at 427. On the contrary, "the language [of the PAIMI Act] reveals a congressional intent to preempt state laws prohibiting access to records under § 10805 or § 10806." Hammons, 323 F.3d at 1272 (internal citations omitted).

Under the Supremacy Clause of the United States Constitution, state law is preempted by federal law in three circumstances. First, "Congress can define explicitly the extent to which its enactments pre-empt state law" through explicit statutory language. See English v. General Elec. Co., 496 U.S. 72, 78-79 (1990) (citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299 (1988)). Second, "in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." Id. Finally, state law is preempted where it actually conflicts with federal law. Id. In the present case, the PAIMI Act explicitly demonstrates Congress's intent to pre-empt state law protecting peer review records. Additionally, if the Court finds that state peer review privilege prevents the disclosure of the records in question, such law conflicts with federal law and is therefore preempted.

The language of the PAIMI Act reflects Congress's intent to preempt any contrary state law. The statute provides the P&A with access to a broad class of documents, i.e. to *all records of an individual* with mental illness. 42 U.S.C. § 10805(a)(4)(A) (emphasis

11

added). Moreover, the PAIMI Act specifically addresses a situation in which state law prohibits access to records of such individuals:

> If the laws of a State prohibit an eligible system from obtaining access to the records of an individual with a mental illness in accordance with section 105(a)(4) [42 U.S.C. § 10805(a)(4)(A)] and this section [Id. § 10806(b)(3)(A)], section 105(a)(4) and this section shall not apply to such system before— (i) the date such system is no longer subject to such a prohibition; or (ii) the expiration of the 2-year period beginning on the date of the enactment of this Act [enacted May 23, 1986], whichever occurs first.

Id. § 10806(b)(2)(C). In other words, if North Carolina's peer review law prohibits DRNC from accessing D.K.'s records in accordance with the PAIMI Act, the prohibition shall not apply to DRNC after the expiration of the 2-year period ending May 23, 1988. The PAIMI Act therefore directs that the peer review law may no longer be invoked to prohibit DRNC from accessing D.K.'s records. The statutory language demonstrates Congress's intent to preempt state law beginning two years after the passage of the PAIMI Act. Therefore, the PAIMI Act preempts North Carolina's peer review law.

A number of federal courts have considered the question of whether Congress intended the PAIMI Act to preempt state law protecting peer review records. In each case, the courts held that the PAIMI Act expressed an explicit intent to preempt state law. "[Section 10806(b)(2)(C)] clearly reflects Congress's intent to preempt all state laws that did not allow for the disclosure of records… after May 23, 1988. The Tenth Circuit has also concluded that this section, which the 1991 amendments did not alter, provides a clear indication that Congress did not intend state laws prohibiting disclosure of records to P&A systems to survive PAIMI." Prot. & Advocacy for Pers. with Disabilities v.

12

Mental Health & Addiction Servs., 448 F.3d at 127. See also Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health, 447 F.3d at 1023 ("PAMII's plain language affords the answer by specifically providing a grace period of up to two years before PAMII preempts such state laws."); Hammons, 323 F.3d at 1268-69 ("There is nothing in the text of PAMII, however, that supports the [] contention that this federal statute does not require disclosure of peer review reports that are protected under state law. Indeed, there is not even any mention of peer review reports in the legislative history that accompanied the initial passage of the Act in 1986.").

Moses Cone relies on subsequent legislative history and the regulations issued to implement the PAIMI Act to demonstrate that Congress did not intend for the PAIMI Act to preempt state peer review law. Def. Brief in Support of Its Motion to Dismiss p. 8-9. This reliance is misplaced. First, Moses Cone points to the 1991 House Committee Report regarding the reauthorization of the PAIMI Act, which states it is the Committee's "intent that the Act does not preempt State law regarding disclosure of peer review/medical review records relating to the proceedings of such committee." H.R. Rep. No. 102-319, at 6 (1991), reprinted in 1991 U.S.C.C.A.N. 777, 782. The Senate Report summarizes testimony regarding similar hesitation to allow the P&A to access peer review records. S. Rep. 102-114 (1991), reprinted in 1991 WL 142023, at *3-4. Every court to have considered this argument has concluded that the text of the legislative debate did not serve to amend the statute or otherwise alter the plain language of the PAIMI Act, which allows P&A access to peer review records. "While we acknowledge

13

that language contained in a committee report is an expression of legislative intent, it is not, by itself, sufficient to alter our reasonable interpretation of the statute, particularly in view of the fact that *Congress chose not to amend the text of the Act in 1991 to reflect or implement in any way the committee report remarks*." Hammons, 323 F.3d at 1271 (emphasis added). See also Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d at 126-127 ("Despite these references to avoiding preemption of state statutes protecting peer review records from disclosure, Congress did not amend the language of § 10805(a)(4) or § 10806(b)(3)(A) to implement that goal.").

The importance of Congress's decision not to adopt any statutory amendments in the course of the 1991 reauthorization of the PAIMI Act cannot be overstated, as the decision underscores a clear intent to retain PAIMI's preemptive reach. "The statements in the committee reports conflict with the clear preference for preemption in PAIMI's text." Id. at 127. Further,

> as the committee report remarks themselves indicate, Congress can hardly have been unaware of the existence of peer review committees and the fact that virtually all states had statutes protecting peer review records from disclosure. But, despite that, the text of the Act regarding record access was not amended, although other amendments were made, and no amendment was made to § 10806(b)(2)(C), which specifically addresses the situation where laws of a state "prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with § 10805(a)(4)."

Hammons, 323 F.3d at 1271-1272. Given Congress's failure to amend the language of § 10806(b)(2)(C) in light of the committee discussions, "[l]egislative statements concerning preemption… [are not persuasive] to find ambiguity in the statute of the question of

14

access to peer review records." Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d at 126.

Second, Moses Cone cites the implementing regulations to the PAIMI Act as demonstrating Congress's intent that PAIMI not preempt state peer review laws. Specifically, 42 C.F.R. § 51.41(c)(4) states "that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." None of the federal courts that have considered this matter have held this regulation prohibits disclosure of peer review records to the P&A. The Second Circuit held that because the statutory language clearly indicates Congress's intent to preempt state peer review law, the court need not consider whether the regulation is a reasonable interpretation of the statute. Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d at 128 ("Because we conclude that Congress has clearly spoken to the question of whether OPA may have access to… peer review records, we do not proceed to the second step of the *Chevron* analysis to determine whether the regulatory interpretation is a permissible construction of the statute. Where, as here, Congress has unequivocally expressed its intent, the statute controls."). The majority of circuit courts addressing this question have determined that, in light of the broad language of the PAIMI statute, "the interpretation of PAMII set out in 42 C.F.R. § 51.41(c)(4) does not represent a reasonable interpretation of the statute." Hammons, 323 F.3d at 1272 (citing Houston, 228 F.3d at 427). The U.S. Department of Health and Human Services cannot "reduc[e] the statute's preemptive force" without "a legislative

15

change to the plain language of the statutory text. Such a change cannot 'be achieved by means of a regulation.'" Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health, 447 F.3d at 1024 (citing Houston, 228 F.3d at 428). The court in Houston succinctly summarizes the lack of effect of the regulation on the language of the statute:

> The interpretation of PAMII set out in 42 CFR 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it… As noted, PAMII requires that groups such as PP&A be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not others. If Congress wished to achieve that result, it needed to enact different statutory language. It could not achieve that result, in the face of the statutory language it enacted, simply by inserting a passage in a committee report. Nor could that result by achieved by means of a regulation.

Houston, 228 F.3d at 427-428.

The plain language of the PAIMI Act demonstrates Congress's intent to preempt state peer review law, and neither the regulations to the Act nor its legislative history lend themselves to a different interpretation of the Act. Therefore, were the records in question privileged under North Carolina's peer review law, that law would be preempted by the PAIMI Act and Moses Cone would be required to disclose the records to DRNC as requested. As such, Moses Cone's motion to dismiss should be denied.[3]

---

[3] In any case, the purpose of Rule 12(b)(6) is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley, 464 F.3d at 483. Moses Cone's interpretation of the PAIMI Act and its asserted defense of privilege does not render DRNC's complaint insufficient; it merely demonstrates the need for the Court to address the merits of DRNC's claims and Moses Cone's affirmative defense.

16

## CONCLUSION

Plaintiff has met its burden of showing that it has stated a claim upon which relief can be granted. As such, the Court should deny Defendant's Motion to Dismiss the present action.


Dated: January 6, 2012                    Respectfully submitted,

/s/ John R. Rittelmeyer
John R. Rittelmeyer
john.rittelmeyer@disabilityrightsnc.org
N.C. State Bar No. 17204

/s/ Kristine L. Sullivan
Kristine L. Sullivan
kristine.sullivan@disabilityrightsnc.org
N.C. State Bar No. 35595

DISABILITY RIGHTS NC
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608
Phone: (919) 856-2195
Fax: (919) 856-2244
*Attorneys for Plaintiff*

<u>Certificate of Service</u>

The undersigned hereby certifies that on January 6, 2012, I electronically filed the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Maureen Demarest Murray
    maureen.murray@smithmoorelaw.com

    Allyson Jones Labban
    allyson.labban@smithmoorelaw.com

    Respectfully submitted,

    /s/ John R. Rittelmeyer
    John R. Rittelmeyer
    DISABILITY RIGHTS NC
    2626 Glenwood Avenue, Suite 550
    Raleigh, NC  27608
    Phone: (919) 856-2195
    Fax: (919) 856-2244
    john.rittelmeyer@disabilityrightsnc.org