IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DISABILITY RIGHTS NORTH        )
CAROLINA,                      )
                               )
            Plaintiff,         )
                               )
     v.                        )        1:11CV812
                               )
MOSES H. CONE MEMORIAL         )
HOSPITAL OPERATING CORPORATION,)
d/b/a MOSES CONE HEALTH        )
SYSTEM, d/b/a CONE HEALTH      )
BEHAVIORAL HEALTH HOSPITAL,    )
                               )
            Defendants.        )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is Defendant's Motion to Dismiss Amended Complaint (Doc. 14). Defendant Moses H. Cone Memorial Hospital Operating Corporation ("Moses Cone") has filed a memorandum (Doc. 15) in support of its motion, and Plaintiff Disability Rights North Carolina ("DRNC") has filed a response in opposition (Doc. 16). Defendant's motion to dismiss is now ripe for adjudication, and for the reasons that follow, this

court will deny the motion.[1]

**I. BACKGROUND**

The following facts are presented in the light most favorable to Plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff DRNC is a non-profit corporation designated by the governor of North Carolina as the state's protection and advocacy system for individuals with disabilities under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10851. (First Amended Complaint ("First Am. Compl.") (Doc. 10) ¶¶ 3, 9.) As North Carolina's designated protection and advocacy system, DRNC "has the responsibility and authority to access records in the course of investigating allegations of abuse or neglect of individuals with mental illness." (Id. ¶ 4.)

Defendant Moses Cone "is a healthcare provider system composed of multiple providers." (Id. ¶ 11.) One facility in

---

[1] Defendant's motion to dismiss the original complaint (Doc. 7) under Federal Rules of Civil Procedure 12(b)(4) – for failing to name the proper defendant – and 12(b)(6) is still pending. Plaintiff subsequently filed an amended complaint (Doc. 10) that properly identified Defendant Moses H. Cone Memorial Hospital Operating Corporation, rendering the Rule 12(b)(4) argument moot. Both motions to dismiss present the same Rule 12(b)(6) arguments. Accordingly, this Memorandum Opinion and Order applies equally to both motions and, for the same reasons stated below, Defendant's initial motion to dismiss (Doc. 7) is also denied.

this healthcare system is Cone Health Behavioral Health Hospital ("Behavioral Health Hospital"), which provides in-patient psychiatric services. (Id. ¶ 12.)

On November 24, 2010, an individual with mental illness who had been involuntarily committed for mental health treatment – referred to in the pleadings as "D.K." – died while a patient of Behavioral Health Hospital.[2] (Id. ¶¶ 13-14.) Upon his transfer to Behavioral Health Hospital,

> D.K. . . . refused all medication and became increasingly agitated. Immediately after administering a psychotropic medication to D.K. against his will, Behavioral Health Hospital staff held D.K. in a physical hold. D.K. struggled against the restraint then appeared to relax. Behavioral Health Hospital staff discovered that D.K. had shallow respirations and a low pulse. Despite efforts to revive him, D.K. died . . . approximately one hour after he was restrained. The medical examiner determined D.K.'s exertion against the restraint was a contributing factor in his death.

(Id. ¶ 14.)

On or about January 10, 2011, DRNC learned of D.K.'s death. (Id. ¶ 15.) Upon determining that it had probable cause to suspect that D.K. had died through abuse or neglect, DRNC initiated an investigation into D.K.'s death. (Id.) DRNC notified Moses Cone in writing on January 26 that it would be investigating the circumstances of D.K.'s treatment and death.

-3-

Case 1:11-cv-00812-WO-LPA   Document 17   Filed 01/17/13   Page 3 of 14

(Id. ¶ 16.) It also requested access to various documents including D.K.'s treatment records and Defendant's internal investigation records, including but "not limited to root cause analyses and other peer review records." (Id.) This letter presented the statutory basis for DRNC's request. (Id.)

DRNC did receive some of the requested records on February 8; however, Moses Cone refused to provide internal investigation reports without a court order, citing several legal privileges. (Id. ¶ 17.) Defendant continued to assert these privileges throughout a series of oral and written requests for internal investigation reports related to D.K.'s treatment and death. (See id. ¶¶ 18-20.)

## II. LEGAL STANDARD

Defendant has moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order for a claim to be facially plausible, a

---
² The Guilford County Department of Social Services was acting as D.K.'s guardian at the time of his death. (First Am. Compl. (Doc. 10) ¶ 24.)

plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). When ruling on a Rule 12(b)(6) motion, a court must accept the complaint's factual allegations as true. Id. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**III. ANALYSIS**

DRNC asserts claims for injunctive and declaratory relief under the PAIMI Act. Specifically, DRNC alleges that Moses Cone has refused to disclose peer review documents to which it, as North Carolina's protection and advocacy system, is entitled. Defendant contends that Plaintiff has failed to state a claim on several grounds. For the reasons that follow, the court finds that DRNC has appropriately stated its claims for declaratory and injunctive relief.

First, Defendant argues that DRNC has "fail[ed] to articulate the 'statutory rights' that are allegedly violated by Moses Cone's refusal to produce peer review protected

-5-

materials." (Def.'s Mem. in Supp. of Mot. to Dismiss Am. Compl. ("Def.'s Mem.") (Doc. 15) at 4.) Plaintiff has alleged, however, that it has been denied access to records which it is entitled to review as part of its investigatory authority as an authorized protection and advocacy system under the PAIMI Act. (First Am. Compl. (Doc. 10) ¶¶ 5, 24, 30.) That Act authorizes protection and advocacy systems to sue for injunctive and declaratory relief when they have been denied access to patient records. Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin., 603 F.3d 365, 375 (7th Cir. 2010) (en banc), cert. denied, ___ U.S. ___, 131 S. Ct. 2149 (2011); see also id. ("Congress expressed its intent to create a legally enforceable right of access to patient records vested in an identifiable class–protection and advocacy systems, . . . which act for the benefit and protection of mentally ill individuals who may have difficulty acting for themselves."). "[T]hese powers are conferred upon a protection and advocacy system . . . as a matter of federal law by virtue of its designation by a state." Id. at 375-76.

Furthermore, DRNC has alleged that it is entitled to review D.K.'s records pursuant to 42 U.S.C. § 10805(a)(4)(B). (First Am. Compl. (Doc. 10) ¶¶ 23-24.) That statute grants protection and advocacy systems access to "all records" of "any individual

-6-

[covered by the statute] (including an individual who has died or whose whereabouts are unknown) –

>   (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;

>   (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

>   (iii) with respect to whom a complaint has been received by the system or with respect to whom . . . there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 10805(a)(4)(B).  Because he died, D.K. is no longer capable of authorizing DRNC to access his records.  DRNC has also alleged that D.K.'s legal guardian was the Guilford County Department of Social Services, a division of the state, and that upon receipt of a complaint, DRNC had determined there was reason to believe that D.K. had been abused and/or neglected. (First Am. Compl. (Doc. 10) ¶ 24.)  Thus, Plaintiff has adequately stated the statutory basis for its right to access D.K.'s records.

Second, Defendant contends that DRNC "fail[ed] to allege a single fact to support its allegations that . . . Moses Cone has somehow stripped Plaintiff of its robust investigatory powers or prevented Plaintiff from exercising those powers."  (Def.'s Mem. (Doc. 15) at 4.)  Defendant cites no authority that would

-7-

require DRNC to make either showing, and the court has been unable to find any. Under the PAIMI Act, protection and advocacy systems are entitled to access "all records" of certain individuals with mental illnesses. 42 U.S.C. §10805(a)(4). As discussed above, DRNC has adequately pled that it had the right to access D.K.'s records and that it has been denied access to those same records. It need not demonstrate that Defendant's refusal to produce these records prevented it from fully exercising its investigatory powers.

Third, Defendant argues that, as a matter of law, Plaintiff is not entitled to access the peer review records at issue. Defendant does not argue that peer review records are not "records" as that term is used in the PAIMI Act.[3] Nor does it contend that Plaintiff is not entitled to access D.K.'s other medical records. Instead, Defendant argues that Plaintiff has not adequately stated a claim because the peer review records at

---

[3] Each federal court of appeals to have considered this issue has found that peer review records are "records" under the PAIMI Act. See Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin., 603 F.3d 365, 383 (7th Cir. 2010), cert. denied, ___ U.S. ___, 131 S. Ct. 2149 (2011); Prot. & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119, 128 (2d Cir. 2006); Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health, 447 F.3d 1021, 1023 (8th Cir. 2006); Ctr. for Legal Advocacy v. Hammons, 323 F.3d 1262, 1270 (10th Cir. 2003); Pa. Prot. & Advocacy, Inc. v. Houstoun, 228 F.3d 423, 428 (3d Cir. 2000).

-8-

issue are privileged under North Carolina law and the PAIMI Act does not preempt state-law privileges.[4]  Although the Fourth Circuit has not yet addressed this issue, a number of other federal courts of appeal have.  Finding those cases persuasive, this court adopts their reasoning below.

First, Moses Cone argues that peer review records are protected from disclosure in North Carolina.  Under North Carolina law, "[t]he proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential . . . and <u>shall not be subject to discovery or introduction into evidence in any civil action against a hospital</u> . . . which results from matters which are the subject of evaluation and review by the committee."  N.C. Gen. Stat. § 131E-95(b) (emphasis added); <u>see also</u> N.C. Gen. Stat. § 122C-30 (using the same language to protect proceedings of peer review and quality assurance committees at facilities for the mentally ill).  Plaintiff responds by contending that

---

[4] As an alternative to its primary argument, Plaintiff has asserted that "Moses Cone's peer review committee may be an agency . . . depending upon the composition of the committee." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. (Doc. 16) at 10); (<u>see also</u> First Am. Compl. (Doc. 10) ¶¶ 25-26.) Defendant contends that it is not an "agency" as that term is used in 42 C.F.R. § 51.41(c)(2).  (Def.'s Mem. (Doc. 15) at 9.) At this stage, the court need not address this argument because its ruling on this motion to dismiss is not affected by this issue.

-9-

this privilege would "only protect[] the hospital from the use of the records against it in civil litigation arising from the matter under the committee's review."  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. (Doc. 16) at 6.)

Initially, this court is not persuaded that disclosure of the requested records under the circumstances of this case implicates either state-law privileges or preemption.  The North Carolina statute designates peer review records as "confidential" and prohibits discovery or introduction into evidence of such records in any civil action against a hospital.  DRNC's request does not implicate this statute, however, as DRNC has requested these records for use in a federally-authorized investigation, not in a civil action against a hospital.  Furthermore, the PAIMI Act would require DRNC to "maintain the confidentiality of [the requested] records to the same extent as is required of the provider of such [mental health] services."  <u>See</u> 42 U.S.C. § 10806(a).  Even assuming that the peer review

-10-

records at issue in this case are privileged under state law,[5] Plaintiff, for the reasons discussed below, has adequately stated a claim for relief under the PAIMI Act.

Second, Moses Cone argues that the PAIMI Act's record-access provisions do not preempt state privileges. To support this contention, Defendant relies on legislative history from the PAIMI Act's re-authorization in 1991 and regulations promulgated by the United States Department of Health and Human Services. This court need not exhaustively address Defendant's non-preemption argument because the same argument has been considered and rejected by several courts of appeals.

Although one of its implementing regulations does provide that the PAIMI Act is not "intended to preempt State law protecting records produced by medical care evaluation or peer review committees," 42 C.F.R. § 51.41(c)(4) (2011), each court of appeals to have considered this regulation has rejected it, holding either that it contradicts the plain meaning of the

---

[5] The Second and Third Circuits, interpreting state statutes that protected peer review records from "discovery or introduction into evidence in any civil action," both found that these state laws did not prevent the disclosure of peer review records to protection and advocacy systems because the records would be used to fulfill the advocacy and investigatory purposes of these systems, not as evidence in a civil action. Prot. & Advocacy for Persons with Disabilities, 448 F.3d at 128 (construing Conn. Gen. Stat. § 19a-17b(d) (2003)); Houstoun, 228 F.3d at 428 (construing 63 Pa. Stat. Ann. § 425.4 (West 1996)).

-11-

statute or that it is an unreasonable interpretation of that statute.  For example, in an opinion authored by then-Judge Alito, the Third Circuit held that the "interpretation of [PAIMI] set out in 42 C.F.R. § 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it." Houstoun, 228 F.3d at 427.  Similarly, the Second Circuit, in an opinion by then-Judge Sotomayor, found that Congress had "clearly spoken" to the issue of whether protection and advocacy systems are entitled to access peer review records, noting that where "Congress has unequivocally expressed its intent, the statute controls." Prot. & Advocacy for Persons with Disabilities, 448 F.3d at 128.  The Eighth and Tenth Circuits have reached the same conclusion. Mo. Prot. & Advocacy Servs., 447 F.3d at 1024; Hammons, 323 F.3d at 1272.

As further support for its argument that the PAIMI Act does not preempt North Carolina's peer review privilege, Defendant quotes statements from the House and Senate Committee Reports at the time of the Act's 1991 re-authorization. See H.R. Rep. No. 102-319, at *6 (1991), reprinted in 1991 U.S.C.C.A.N. 777, 782; S. Rep. No. 102-114 (1991).  For example, the House Report states that "[i]t is the Committee's intent that the PAIMI Act does not preempt State law regarding disclosure of peer review/medical review records relating to the proceedings of

-12-

such committees."  H.R. Rep. No. 102-319, at *6, reprinted in 1991 U.S.C.C.A.N. at 782.

Despite this strong language in the legislative history, Congress did not amend the PAIMI Act's record-access provisions. Mo. Prot. & Advocacy Servs., 447 F.3d at 1024.  Each court of appeals to have considered the PAIMI Act in light of this subsequent legislative history has found that it may not be used to alter the plain meaning of the Act's text.  See id. ("Because [the PAIMI Act's] language is unambiguous, we see no reason to resort to congressional committee reports as interpretive devices."); Prot. & Advocacy for Persons with Disabilities, 448 F.3d at 127 ("[T]he statements in the committee reports conflict with the clear preference for preemption in PAIMI's text."); Hammons, 323 F.3d at 1271 ("While we acknowledge that language contained in a committee report is an expression of legislative intent, it is not, by itself, sufficient to alter our reasonable interpretation of the statute, particularly in view of the fact that Congress chose not to amend the text of the Act in 1991 to reflect or implement in any way the committee report remarks."); Houstoun, 228 F.3d at 428 ("If Congress wished to [subject protection and advocacy systems to state peer review disclosure laws], it needed to enact different statutory language.  It could not achieve that result, in the face of the statutory

-13-

language it enacted, simply by inserting a passage in a committee report.").

Instead, these courts have found that the PAIMI Act's plain language evinces clear congressional intent to preempt state privilege laws to the extent they would prevent protection and advocacy systems from accessing peer review records. See Mo. Prot. & Advocacy Servs., 447 F.3d at 1024; Prot. & Advocacy for Persons with Disabilities, 448 F.3d at 127 (noting the "clear preference for preemption in PAIMI's text"); Hammons, 323 F.3d at 1272 (discussing 42 U.S.C. § 10806(b)(2)(C)). Thus, protection and advocacy systems are entitled to access peer review records covered by the PAIMI Act "irrespective of state law." Houstoun, 228 F.3d at 428.

**IV. Conclusion**

For the reasons set forth herein, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 7) and Motion to Dismiss Amended Complaint (Doc. 14) are **DENIED**.

This the 17th day of January, 2013.

                                              /s/ William L. Osteen, Jr.
                                           United States District Judge