IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DISABILITY RIGHTS NORTH        )
CAROLINA,                      )
                               )
            Plaintiff,         )
                               )
    v.                         )    1:11CV812
                               )
MOSES H. CONE MEMORIAL         )
HOSPITAL OPERATING CORPORATION,)
d/b/a MOSES CONE HEALTH        )
SYSTEM, d/b/a CONE HEALTH      )
BEHAVIORAL HEALTH HOSPITAL,    )
                               )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is Plaintiff's Motion for Judgment on the Pleadings (Doc. 19). Plaintiff has filed a memorandum in support of its motion (Doc. 20), Defendant has filed a response in opposition (Doc. 23), and Plaintiff has filed its reply (Doc. 24). Plaintiff's motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.

**I.   BACKGROUND**

Viewed in the light most favorable to Defendant, the evidence shows the following.

Plaintiff Disability Rights North Carolina ("Plaintiff") is a non-profit corporation designated by the governor of North Carolina as the state's protection and advocacy system for individuals with disabilities under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10851. (First Amended Complaint ("First Am. Compl.") (Doc. 10) ¶ 9; Answer to First Amended Complaint ("Answer") (Doc. 18) ¶ 9.)

On November 24, 2010, an individual – referred to in the pleadings as "D.K." – died while a patient of Cone Health Behavioral Health Hospital ("Behavioral Health Hospital"), a facility through which Defendant Moses H. Cone Memorial Hospital Operating Corporation ("Defendant") provides in-patient psychiatric services. (First Am. Compl. (Doc. 10) ¶¶ 12-13; Answer (Doc. 18) ¶¶ 12-13.) D.K. had previously been diagnosed with schizoaffective disorder and had a history of declining to take his medication. (First Am. Compl. (Doc. 10) ¶ 13; Answer (Doc. 18) ¶ 13.)

D.K. was transported to Wesley Long Community Hospital ("Wesley Long"), one of Defendant's facilities, by law enforcement on November 22, 2010. (First Am. Compl. (Doc. 10) ¶ 14; Answer (Doc. 18) ¶ 14.) While at Wesley Long, D.K. was involuntarily committed for mental health treatment pursuant to

the process established under North Carolina law. (Id.) He was later transferred to Behavioral Health Hospital where he received mental health care services including medication and restraint. (Id.)

On January 26, 2011, Plaintiff notified Defendant in writing that it would be investigating the circumstances of D.K.'s treatment and death. (First Am. Compl. (Doc. 10) ¶ 16; Answer (Doc. 18) ¶ 16.) Plaintiff also requested access to various documents including D.K.'s treatment records and Defendant's internal investigation records including, but not limited to, root cause analyses and other peer review records. (Id.)

Plaintiff did receive some of the requested records on February 8, 2011; however, Defendant refused to provide internal investigation reports without a court order, citing several legal privileges. (First Am. Compl. (Doc. 10) ¶ 17; Answer (Doc. 18) ¶ 17.) Defendant continued to assert these privileges throughout a series of oral and written requests for internal investigation reports related to D.K.'s treatment and death. (See First Am. Compl. (Doc. 10) ¶¶ 18-20; Answer (Doc. 18) ¶¶ 18-20.)

A hearing on Plaintiff's motion was held on May 23, 2013. At that hearing, this court heard arguments from the parties and

-3-

took this matter under advisement.  The parties were asked to submit supplemental briefing regarding the different categories of records Plaintiff seeks.  They have now done so by means of a joint stipulation (Doc. 26).  Plaintiff has agreed that it will not seek any attorney work product or communications between Defendant and its legal counsel that are protected by the attorney-client privilege.  In addition, Defendant has agreed to produce the contents of its investigation file except for materials protected by the attorney-client, work-product, or peer-review privilege.  Defendant has already produced the non-privileged components of its investigation file, including witness statements, notes taken by internal investigators, meeting minutes, email correspondence, and incident reports.  It has also produced primary source materials considered by its peer review committee regarding the care and treatment of D.K., but not any documentation of the committee's analysis, deliberation, or peer review-protected conclusions including, but not limited to, any root cause analysis documentation.  As represented to this court, the sole issue remaining is whether Defendant must produce peer review privileged materials.

**II.  LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are

closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Such motions are "designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). "[T]he applicable test under Rule 12(c) is whether, 'when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law.'" Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc., 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (quoting Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985)).

**III. ANALYSIS**

Plaintiff moves for judgment on the pleadings as to its claims for injunctive and declaratory relief under the PAIMI Act. In response, Defendant does not argue that any material fact is in dispute. Instead, Defendant restates several arguments raised in its motion to dismiss the amended complaint. Specifically, Defendant argues that (1) the records Plaintiff seeks are privileged peer review materials under unpreempted North Carolina law, and (2) allowing access to these records

-5-

would produce a chilling effect on the peer review and self-analysis process.[1]

For the reasons stated in this court's prior Memorandum Opinion and Order ("Mem. Op.") (Doc. 17), this court is not persuaded that disclosure of the requested records under the circumstances of this case implicates either state-law privilege or preemption. (See Mem. Op. (Doc. 17) at 10.) Assuming, however, that North Carolina's peer review privilege would otherwise apply, this court finds that Defendant's arguments would not prevent Plaintiff from accessing such records. Those arguments have been previously considered and rejected (see id. at 8-14), and this court incorporates that discussion by reference.

This court next considers whether any genuine issue of material fact remains as to Plaintiff's statutory authority to access the peer review records at issue. As North Carolina's designated protection and advocacy system, Plaintiff has authority to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to

---

[1] Defendant's third argument – that an order to produce peer review documents affects a substantial right and is immediately appealable – mischaracterizes the nature of this lawsuit. Because this court finds that Plaintiff is entitled to declaratory judgment on the pleadings, this Memorandum Opinion and Order has "the force and effect of a final judgment or decree" and is "reviewable as such." See 28 U.S.C. § 2201.

-6-

the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A). One component of this investigative responsibility is the authority to access patient records under certain conditions. For example, the PAIMI Act grants protection and advocacy systems access to "all records" of "any individual [covered by the statute] (including an individual who has died or whose whereabouts are unknown) --

> (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
>
> (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (iii) with respect to whom a complaint has been received by the system or with respect to whom . . . there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 10805(a)(4)(B); see also 42 C.F.R. § 51.41(b)(2). Because he died, D.K. is no longer capable of authorizing Plaintiff to access his records. Plaintiff has also alleged that D.K.'s legal guardian was the Guilford County Department of Social Services, a division of the state, and that upon receipt of a complaint Plaintiff had determined there was probable cause to believe that D.K. had been abused and/or neglected. (First Am. Compl. (Doc. 10) ¶ 24.)

-7-

In its Answer, Defendant denied that the Guilford County Department of Social Services served as D.K.'s legal guardian, that Plaintiff had received a complaint regarding D.K.'s death, and that Plaintiff had determined that it had probable cause to believe that D.K. had been subjected to abuse and/or neglect, because it was "without knowledge or information sufficient to form a belief as to the truth or falsity" of those allegations. (See Answer (Doc. 18) ¶ 24.) Although such a statement "has the effect of a denial," Fed. R. Civ. P. 8(b)(5), Defendant has not challenged the factual basis entitling Plaintiff to access D.K.'s records. Instead, Defendant has proceeded as if Plaintiff had such authority by having already provided certain of D.K.'s records to Plaintiff. (Answer (Doc. 18) ¶ 17; Joint Stipulation (Doc. 26) at 2.) Furthermore, when Defendant specifically denied allegations, it tailored those denials so as to only address Plaintiff's authority to access records that Defendant contends are protected by state-law privileges. (See, e.g., Answer (Doc. 18) ¶¶ 4, 5, 10, 16, 17, 18.)

Defendant clarified its position as to these factual issues at the May 23 hearing. Although Defendant disagrees with Plaintiff's determination that it had probable cause to believe that D.K. had been abused and/or neglected, it does not dispute that Plaintiff in fact made such a determination. Defendant's

-8-

counsel also stated that a factual hearing would be unnecessary to resolve whether Plaintiff had made a probable cause determination or whether the Guilford County Department of Social Services served as D.K.'s legal guardian at the time of his death.

Based on the foregoing, this court finds that there is no dispute as to the material facts underlying the statutory basis entitling Plaintiff to access D.K.'s records. Because Plaintiff has demonstrated that it is entitled to access D.K.'s records, including the peer review records at issue, pursuant to 42 U.S.C. § 10805(a)(4)(B), Plaintiff's motion for judgment on the pleadings will be granted.

In the event Plaintiff's motion was granted, Defendant requested a determination that in providing peer review records to Plaintiff it will not waive its peer review privilege as to any other entity or individual. Because Defendant is required to produce these records to Plaintiff as a matter of law, this court finds that Defendant has not acted inconsistently with its peer review privilege. Thus, this court finds that – to the extent the privilege otherwise applies – Defendant has not waived its peer review privilege as to the documents at issue in this proceeding.

Defendant also requests a protective order that would require Plaintiff "to use the documents only in its agency role, keep them confidential, and not share them with any third party." (Def.'s Mem. in Resp. to Pl.'s Mot. for J. on the Pleadings (Doc. 23) at 5.) Because the PAIMI Act and its implementing regulations already require protection and advocacy systems to adhere to certain confidentiality requirements, see 42 U.S.C. § 10806; 42 C.F.R. § 51.45, this court finds no good cause for entering a separate protective order.[2] Furthermore, to the extent the proposed protective order would impose restrictions on the use of disclosed materials other than those imposed by federal law, it is overbroad and would unnecessarily burden Plaintiff's function as North Carolina's protection and advocacy system. Thus, this court will deny Defendant's request for a protective order. Of course, Plaintiff must comply with all federal laws regarding record maintenance and confidentiality.

---

[2] In general, a protection and advocacy system must maintain the confidentiality of records to the same extent as a provider of mental health services. See 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45(a)(1)(i). The PAIMI Act's regulations also require protection and advocacy systems to take affirmative steps to protect their records from "loss, damage, tampering or use by unauthorized individuals." See 42 C.F.R. 51.45(a).

**IV. CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 19) is **GRANTED**. A judgment consistent with this order will be entered contemporaneously herewith.[3]

This the 11th day of September, 2013.

/s/ William L. Osteen, Jr.
United States District Judge

---

[3] The legal issues presented by this case have not yet been addressed by the Fourth Circuit and the records at issue contain sensitive information. This court's comments at the hearing may have suggested that it was considering entry of a stay pending appeal; however, this court will not, sua sponte, stay this order and judgment. Instead, that issue will be considered only upon motion as may be reasonably necessary.